IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID LEE MAYO, #241618, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:11-CV-392-MHT |
| | ) | [WO] |
| ANTHONY ASKEW; WARDEN HEITZEL, and MR. ANGLIN, | ) ) ) ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by David Lee
Mayo ["Mayo"], an indigent state inmate currently incarcerated at the Easterling Correctional
Facility ["Easterling"].  Mayo alleges that he follows the Native American religion, and he
claims: (1) defendants refused to allow him to use tobacco for smoking in the ceremonial
pipe, and refused to allow him to use tobacco in sacred prayer ties hung in the Tree of Life;
(2) defendants allow racist gangs to desecrate the Native American grounds; and (3)
defendants refuse to provide an environment where the sweat lodge can be used appropriately
or to transfer him to an institution with a functioning sweat lodge and tobacco use, in
violation of his rights under the First Amendment, Eighth Amendment, Fourteenth
Amendment, Alabama Constitution, and Alabama Department of Corrections ["ADOC"]

Policy No. 333.  *Compl. - Doc. No. 7* at 2-4, *Amended Compl. - Doc. Nos. 21-22*.  Mayo names as defendants[1] Chaplain Anthony Askew, Warden Heitzel, and Chaplain Mr. Anglin, who all work at Easterling.  He seeks injunctive relief and monetary damages for the alleged violations.[2]  *Doc. No. 7* at 4.

The defendants filed an answer, special report, supplement to the special report, and supporting evidentiary materials addressing Mayo's claims for relief.  *Docs. Nos. 27, 28, 37.* Defendants argue that Mayo's claims are without merit, they are entitled to immunity, Mayo fails to show any injury, and Mayo failed to exhaust his available administrative remedies before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

The court informed Mayo that the defendants' special report may, at any time, be treated as a motion for summary judgment and explained to Mayo the proper manner in which to respond to a motion for summary judgment.  *Doc. No. 38.*  Mayo filed several responses. *Doc. Nos. 40, 41, 58.*  The court deems it appropriate to treat the defendants' report and supplemental report as a motion for summary judgment.  Thus, this case is now

---

[1] Mayo originally named Richard Allen, Gwendolyn Mosley, Louis Boyd, Kenneth Sconyers, Gwendolyn Babers, Steven Walker, Robert Bentley, and Kim Thomas as defendants.  Mayo did not name Allen or Walker as defendants in the amended complaint, therefore they are no longer part of the case.  *Doc. No. 7.*  The court dismissed Mosley, Boyd, Sconyers, Babers, Bentley, and Thomas pursuant to 28 U.S.C. § 1915e(2)(B)(ii).  *Doc. No. 32.*

[2] Specifically, Mayo asks for fees and costs, and he seeks $5,000 from each defendant "due to personal bias and extreme prejudice. Total of $45,000 to each practitioner and to transfer each practitioner to a camp that allows the use of tobacco and that has a functioning sweat lodge."  *Doc. No. 7* at 4.

pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact." *Celotex Corp. v. Catrett*, 477

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. [] Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to

survive the defendant's properly supported motion for summary judgment, McKeithen is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to

be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the

evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, the plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION

In their motion for summary judgment, defendants assert that Mayo's claims are due to be dismissed as premature because he failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *Defs.'*

7

*Report - Doc. No. 28* at 13-14, *Defs.'s Supp. Report - Doc. No. 37.*  Specifically, defendants maintain that Mayo never filed a Request for Religious Assistance as provided in Alabama Department of Corrections ["ADOC"] Administrative Regulation 313 ["AR 313"]. *Summers July 27, 2011, Aff. - Doc. No. 28-3* at 2; *Defs.' Ex. 10 - Doc. No.* 28-10 at 2; *Ex. 1 to Summers Aug. 25, 2011, Aff. - Doc. No.* 37-1 at 4-6.  Because the exhaustion issue is dispositive, the court addresses it first.

### A.  Summary of Material Facts

The following facts are taken in the light most favorable to plaintiff Mayo, the non-moving party.  Mayo is an inmate at Easterling, and he follows the Native American religion. The ADOC adopted policies and regulations concerning religious programming for inmates. Administrative Regulation 333 ["AR 333"] on Religious Program Services approves certain practices and items for Native American inmates, including among other things, the location of ceremonial grounds, prayer pipes, and the herbs "Sage, Sweetgrass, Cedar, Kinnikinick, and Tobacco." *Defs.' Ex. 9 - Doc. No. 28-9* at 13 (AR 333 § V(E)(12)).  Although tobacco is listed as a permitted item in AR 333, tobacco is prohibited by the ADOC at Easterling. Prison staff instead allow Native American inmates at Easterling to purchase any of the other four herbs for use. *Summers July 17, 2011, Aff - Doc. No. 28-1* at 1-2.

AR 313 on Chaplain Services and Religious Activities provides in relevant part:

An inmate . . . whose religious needs cannot be met within the framework of non-denominational, non-sectarian religious service may submit a written request to the Chaplain . . . for assistance. It should be the Chaplain's

responsibility to investigate the inmate's request for religious assistance and determine an appropriate course of action, in conjunction with the Warden or Director if it impacts or has the capacity to impact upon security. The Religious Activities Review Committee has final approval on such matters. . . . It is the inmate's responsibility to provide an authoritative source of information by which the Chaplain may verify the existence of the religion and determine beliefs and practices.

*Defs.' Report Ex. 10 - Doc. No. 28-10* at 2 (AR 313 § III(B)(1)-(2)). The regulation does not identify specific deadlines for processing applications. *Id.* AR 313 provides that religious objects or practices "may be restricted or prohibited when they are considered to be a compromise to the security, safety, health or good order of the institution . . . ." *Id.* at 6 (AR 313 § III(K)(1)). AR 313 also provides a means for resolving disputes about religious matters, and states, in relevant part, "When the Chaplain is unable to resolve a religious dispute, inmates shall use the inmate grievance procedure for resolution of disputes regarding approval or restriction on religious practices or articles." *Id.* (AR 313 § III(L)).

According to Christopher H. Summers, a Chaplain at Holman Correctional Facility, in order to satisfy the religious dispute resolution requirement in AR313, an inmate files a Request for Religious Assistance pursuant to AR 313 ["AR 313 Application"]. *Summers Aff. - Doc. No. 28-3* at 2. The AR 313 Application consists of a page for the inmate to describe the religious practice and source for it, "documented evidence ... provided to the Chaplain/Warden to support the request," a separate page for the "Chaplain's Recommendation," and a third page for the "Warden's Recommendation" and the "Decision of the Religious Activities Review Committee." *Defs.' Supp. Report - Doc. No. 37-1* at 4-6.

9

Summers avers that AR 313 is available to all inmates, and the Chaplain can also provide the information to inmates. *Summers Aff. at 2 - Doc. No. 37-1.* He states the AR 313 Application is available from the Chaplain upon request from an inmate. *Id.* at 2. Summers further indicates that there is no time frame within which inmates must complete the AR 313 Application, and there is no appeal process beyond the AR 313 Application; if the inmate is unsatisfied with the result of the process, he may resubmit the "request with new sources to strengthen the validity of the request for further consideration." *Id.* at 2-3.

Defendant Larry Anglin, a Classification Specialist, interviewed Mayo a few days after Mayo arrived at Easterling on May 11, 2011. *Anglin Aff. - Doc. No. 28-8* at 1. Mayo told Anglin he wanted to be transferred to an institution where he could smoke, and Anglin responded that Mayo needed to stay at Easterling for at least six months. *Id.* Mayo then told Anglin he could not practice his Native American religion at Easterling. Anglin responded that he should talk to the Chaplain about his religious practices because Anglin was not an expert on religious practices. *Id.* Anglin told Mayo that if the Chaplain provided written documentation that Easterling could not accommodate his religious practices, then Anglin would initiate a transfer to another institution that could accommodate them. *Id.*

Mayo asked Defendant Chaplain Askew for clarification of AR 333 regarding tobacco use. *Askew Aff. - Doc. No. 28-6* at 1. Mayo believes that AR 333 § V(E)(12), which permits tobacco for Native Americans' religious use, creates a liberty interest for Native American inmates to have tobacco for religious use at Easterling. He states that Askew laughed at him

when he showed him AR 333 § V(E)(12), and said nothing would ever come of lawsuits about the issue. *Compl.- Doc. No. 7* at 3. Askew informed Mayo that because Easterling is a tobacco-free facility, no tobacco is allowed for staff or inmates, but Mayo could use kinnikinnick, a tobacco-free herb, in ceremonies. *Askew Aff. - Doc. No. 28-6* at 2. Mayo asked Askew to write Anglin, informing Anglin that Mayo could not practice his faith at Easterling and requesting that Mayo be transferred. *Id.* Askew declined and informed Mayo that the classification department handles transfers.

Anglin avers that a few days after his conversation with Mayo in May 2011, Askew called Anglin and said that Easterling could accommodate Mayo's religious practices. *Anglin Aff. - Doc. No. 28-8* at 1. Mayo wrote another request slip to Anglin, asking for a transfer because Easterling could not accommodate his religious practices. Anglin responded to Mayo that it was a religious matter, not a classification matter, and Mayo would not be transferred unless one of Anglin's superior's directed him to transfer Mayo. *Id.*

Mayo states that he repeatedly asked Chaplain Askew for tobacco for ceremonial use, but Askew refused. *Mayo Aff. - Doc. No. 40* at 3. In addition to requesting transfers from Anglin and Askew, Mayo states that he sent several request slips to Warden Boyd and Warden Hetzel concerning the alleged constitutional violations of his religious rights, and Mayo received no response. *Id.* at 4. Mayo does not dispute that he never submitted an AR 313 Application before filing suit in this case. He instead responds that the inmate grievance procedure has been discontinued for years at Easterling. *Pl.'s Resp. - Doc. No. 41* at 4.

Mayo nevertheless submitted an affidavit stating that after this lawsuit was filed, on September 20, 2011, he asked for a Religious Assistance form, but Askew refused to give it to Mayo, instead saying he would get one sent to Mayo at a later date.  *Mayo Aff. - Doc. No. 41-1* at 1.  Mayo does not indicate that he ever followed up on his post-lawsuit request for a Religious Assistance form. Mayo also states that he tried to see Hetzel, but Hetzel would not see Mayo.  *Id.*

## B.  Exhaustion

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexande*r *v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford*

12

*v. Ngo*, 548 U.S. 81, 93 (2006).  Moreover, "the PLRA exhaustion requirement requires *proper exhaustion*."  *Id*. (emphasis added).

The Supreme Court in *Woodford* determined "[proper exhaustion] means . . . that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. The Court further explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings . . . Construing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 91-93.  This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." *Id*. at 95. Consequently, a prisoner cannot "proceed . . . to federal court" after bypassing available administrative remedies, either by failing to exhaust administrative remedies properly or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme."  *Id*.  Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure.  *See*

13

*Booth,* 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Cox v. Mayer,* 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody); *see also Massey v. Helman,* 196 F.3d 727, 733 (7th Cir. 1999).

This court may properly resolve the factual issue relating to exhaustion. *See Bryant v. Rich,* 530 F.3d 1368, 1374 (11th Cir. 2008). It finds that the facts support defendants' statement that Mayo never exhausted his administrative remedies.  The undisputed record in this case establishes that Easterling provides an administrative process for inmates to request assistance with religious practices and raise religious concerns.  The evidentiary materials submitted by defendants demonstrate that Mayo did not pursue and therefore failed to exhaust properly the administrative process with respect to the religious requests about which he complains in this case prior to filing this lawsuit. As noted, exhaustion of available remedies applies to all prisoners in any facility, it is mandatory, and it may not be waived by the court. *See Alexander,* 159 F.3d at 1324-26 (exhaustion requirement of 42 U.S.C. § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or *Bivens*); *see also Porter,* 534 U.S. at 532.  Furthermore, this court may not consider the adequacy or futility of administrative remedies, but only the availability of such. *Higginbottom v Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing *Alexander,* 159 F.3d at 1323). To demonstrate that

14

administrative remedies were unavailable, Mayo must provide specific facts which indicate that prison staff inhibited him from using the grievance process. *See Boyd v. Corr. Corp. Of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Mayo states that he received no response to his letters and request slips to prison officials seeking a transfer or permission to use tobacco, and that he was refused an AR 313 Application *after* this lawsuit was filed. However, he does not dispute that he failed to file an AR 313 Application or pursue the administrative remedies in AR 313 *before* filing this lawsuit, and he also does not state that staff inhibited him from submitting an AR 313 Application *before* filing suit. Based on the foregoing, the court concludes that Mayo's allegations against defendants regarding religious assistance and practices presented in this cause of action are subject to dismissal as he failed to exhaust an administrative remedy available to him which is required before he may proceed in this court on his claims. *Woodford*, 548 U.S. at 87-94. Because Mayo's case is due to be dismissed on exhaustion grounds, the court does not address defendants' other arguments for dismissal.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED without prejudice.

15

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 9, 2014, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner, 66*1 F.2d at 1209 (adopting pre-October 1, 1981 opinions of the Fifth Circuit as binding precedent).

DONE, this 26th day of August, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE