IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID LEE MAYO, | ) | |
| #241618, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-392-MHT |
| | ) | [WO] |
| ANTHONY ASKEW; | ) | |
| WARDEN HEITZEL, and | ) | |
| MR. ANGLIN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

For good cause, it is

ORDERED that the recommendation previously entered in this case (Doc. # 79) be and hereby is WITHDRAWN, and the following recommendation is entered as the recommendation of the court.

## I.  INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by David Lee Mayo ("Mayo"), an indigent state inmate currently incarcerated at the Easterling Correctional Facility ("Easterling"). Mayo alleges that he follows the Native American religion, and he claims: (1) defendants refused to allow him to use tobacco for smoking in the ceremonial pipe, and refused to allow him to use tobacco in sacred prayer ties hung in the Tree of Life; (2) defendants allow racist gangs to desecrate the Native American grounds; and (3)

defendants refuse to provide an environment where the sweat lodge can be used appropriately or to transfer him to an institution with a functioning sweat lodge and tobacco use, in violation of his rights under the First Amendment, Eighth Amendment, Fourteenth Amendment, Alabama Constitution, and Alabama Department of Corrections ("ADOC") Policy No. 333. *Compl. - Doc. No. 7* at 2-4, *Amended Compl. - Doc. Nos. 21-22*. Mayo names as defendants[1] Chaplain Anthony Askew, Warden Heitzel, and Chaplain Mr. Anglin, who all work at Easterling. He seeks injunctive relief and monetary damages for the alleged violations.[2] *Doc. No. 7* at 4.

The defendants filed an answer, special report, supplement to the special report, and supporting evidentiary materials addressing Mayo's claims for relief. *Docs. Nos. 27, 28, 37*. Defendants argue that Mayo's claims are without merit, they are entitled to immunity, Mayo fails to show any injury, and Mayo failed to exhaust his available administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

---

[1]Mayo originally named Richard Allen, Gwendolyn Mosley, Louis Boyd, Kenneth Sconyers, Gwendolyn Babers, Steven Walker, Robert Bentley, and Kim Thomas as defendants. Mayo did not name Allen or Walker as defendants in the amended complaint, therefore they are no longer part of the case. *Doc. No. 7*. The court dismissed Mosley, Boyd, Sconyers, Babers, Bentley, and Thomas pursuant to 28 U.S.C. § 1915e( 2)(B)(ii). *Doc. No. 32*.

[2]Specifically, Mayo asks for fees and costs, and he seeks $5,000 from each defendant "due to personal bias and extreme prejudice. Total of $45,000 to each practitioner and to transfer each practitioner to a camp that allows the use of tobacco and that has a functioning sweat lodge." *Doc. No. 7* at 4.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the defendants' report and supplemental report as a motion to dismiss. *Doc. No. 38; Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) ("(A)n exhaustion defense--as in (this) case--is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'") (citations omitted).   Thus, this case is now pending on the defendants' motion to dismiss, and plaintiff's opposition to it.  *Doc. Nos. 27, 28, 37, 40, 41, 58, 60.*  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion to dismiss is due to be granted.

## II.  STANDARD OF REVIEW

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true.  'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373-74).  If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376)."  *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012). Defendants bear the burden

3

of proof during this second step.  *Turner*, 541 F.3d at 1082.

## III.  DISCUSSION

In their motion to dismiss, defendants assert that Mayo's claims are due to be dismissed as premature because he failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  *Defs.' Report - Doc. No. 28* at 13-14, *Defs.'s Supp. Report - Doc. No. 37.*  Specifically, defendants maintain that Mayo never filed a Request for Religious Assistance as provided in Alabama Department of Corrections ("ADOC") Administrative Regulation 313 ("AR 313").  *Summers July 27, 2011, Aff. - Doc. No. 28-3* at 2; *Defs.' Ex. 10 - Doc. No.* 28-10 at 2; *Ex. 1 to Summers Aug. 25, 2011, Aff. - Doc. No.* 37-1 at 4-6.  As explained, federal law directs this court to treat defendants' response as a motion to dismiss for failure to exhaust an administrative remedy and allows the court to look beyond the pleadings to relevant evidentiary materials in deciding the issue of proper exhaustion.  *Bryant*, 530 F.3d at 1375.

### A.  Exhaustion Principles

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) directs that "(n)o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective

4

of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "(T)he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexande*r *v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Moreover, "the PLRA exhaustion requirement requires *proper exhaustion*." *Id*. (emphasis added).

The Supreme Court in *Woodford* determined "(proper exhaustion) means . . . that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. The Court further explained "(p)roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules (prior to seeking relief from a federal court) because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings . . . Construing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas (a contrary) interpretation (allowing an inmate to bring suit in federal court once administrative remedies are no longer available) would turn that provision into a largely useless appendage." *Id*. at 91-93.  This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance

5

and avoids "mak(ing) the PLRA exhaustion scheme wholly ineffective." *Id*. at 95. Consequently, a prisoner cannot "proceed . . . to federal court" after bypassing available administrative remedies, either by failing to exhaust administrative remedies properly or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme." *Id*. Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure. *See Booth,* 532 U.S. at 741 n.6 ("(W)e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Cox v. Mayer,* 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody); *see also Massey v. Helman,* 196 F.3d 727, 733 (7th Cir. 1999). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam). Even where an inmate litigant "attempt(s) to amend or supplement his original complaint" regarding efforts at subsequent exhaustion, it does "not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect." *Id.*

## B.  Exhaustion of Religious Assistance Remedies

The ADOC adopted policies and regulations concerning religious programming for inmates. Administrative Regulation 333 ("AR 333") on Religious Program Services approves certain practices and items for Native American inmates, including among other things, the location of ceremonial grounds, prayer pipes, and the herbs "Sage, Sweetgrass, Cedar, Kinnikinick, and Tobacco." *Defs.' Ex. 9 - Doc. No. 28-9* at 13 (AR 333 § V(E)(12)). Although tobacco is listed as a permitted item in AR 333, tobacco is prohibited by the ADOC at Easterling. Prison staff instead allow Native American inmates at Easterling to purchase any of the other four herbs for use. *Summers July 17, 2011, Aff - Doc. No. 28-1* at 1-2.

AR 313 on Chaplain Services and Religious Activities provides in relevant part:

> An inmate . . . whose religious needs cannot be met within the framework of non-denominational, non-sectarian religious service may submit a written request to the Chaplain . . . for assistance. It should be the Chaplain's responsibility to investigate the inmate's request for religious assistance and determine an appropriate course of action, in conjunction with the Warden or Director if it impacts or has the capacity to impact upon security. The Religious Activities Review Committee has final approval on such matters. . . . It is the inmate's responsibility to provide an authoritative source of information by which the Chaplain may verify the existence of the religion and determine beliefs and practices.

*Defs.' Report Ex. 10 - Doc. No. 28-10* at 2 (AR 313 § III(B)(1)-(2)). The regulation does not identify specific deadlines for processing applications. *Id.* AR 313 provides that religious objects or practices "may be restricted or prohibited when they are considered to be a compromise to the security, safety, health or good order of the institution . . . ." *Id.* at 6 (AR 313 § III(K)(1)). AR 313 also provides a means for resolving disputes about religious

matters, and states, in relevant part, "When the Chaplain is unable to resolve a religious dispute, inmates shall use the inmate grievance procedure for resolution of disputes regarding approval or restriction on religious practices or articles." *Id.* (AR 313 § III(L)).

According to Christopher H. Summers, a Chaplain at Holman Correctional Facility, in order to satisfy the religious dispute resolution requirement in AR313, an inmate files a Request for Religious Assistance pursuant to AR 313 ("AR 313 Application"). *Summers Aff. - Doc. No. 28-3* at 2. The AR 313 Application consists of a page for the inmate to describe the religious practice and source for it, "documented evidence ... provided to the Chaplain/Warden to support the request," a separate page for the "Chaplain's Recommendation," and a third page for the "Warden's Recommendation" and the "Decision of the Religious Activities Review Committee." *Defs.' Supp. Report - Doc. No. 37-1* at 4-6. Summers avers that AR 313 is available to all inmates, and the Chaplain can also provide the information to inmates. *Summers Aff. at 2 - Doc. No. 37-1.* He states the AR 313 Application is available from the Chaplain upon request from an inmate. *Id.* at 2. Summers further indicates that there is no time frame within which inmates must complete the AR 313 Application, and there is no appeal process beyond the AR 313 Application; if the inmate is unsatisfied with the result of the process, he may resubmit the "request with new sources to strengthen the validity of the request for further consideration." *Id.* at 2-3.

The court granted Mayo an opportunity to respond to the exhaustion defense raised by the defendants in their motion to dismiss. *Doc. No. 29, 38.* In response, Mayo does not

deny that section 1997e requires him to exhaust available administrative remedies. He states that he repeatedly asked Chaplain Askew for tobacco for ceremonial use, but Askew refused. *Mayo Aff. - Doc. No. 40* at 3. In addition to requesting transfers from Anglin and Askew, Mayo states that he sent several request slips to Warden Boyd and Warden Hetzel concerning the alleged constitutional violations of his religious rights, and Mayo received no response. *Id.* at 4. Mayo does not dispute that he never submitted an AR 313 Application before filing suit in this case. He instead responds that the chaplain does not know how to go about the procedure or will not help Mayo, and the inmate grievance procedure has been discontinued for years at Easterling. *Pl.'s Resp. - Doc. No. 41* at 4; *Mayo Aff. - Doc. No. 41-1* at 1. Mayo nevertheless submitted an affidavit stating that after this lawsuit was filed, on September 20, 2011, he asked for a Religious Assistance form, but Askew refused to give it to Mayo, instead saying he would get one sent to Mayo at a later date. *Mayo Aff. - Doc. No. 41-1* at 1. Mayo does not indicate that he ever followed up on his post-lawsuit request for a Religious Assistance form. Mayo also states that he tried to see Hetzel, but Hetzel would not see Mayo. *Id.* Although Mayo's and defendants' allegations conflict, Mayo's allegations that the grievance system was discontinued and the chaplain does not know the procedure are assumed to be true for the purposes of this recommendation. *See Turner*, 541 F.3d at 1082.

The court turns to the second *Turner* step where defendants bear the burden of establishing lack of exhaustion. Defendant Larry Anglin, a Classification Specialist,

interviewed Mayo a few days after Mayo arrived at Easterling on May 11, 2011.  *Anglin Aff. - Doc. No. 28-8* at 1.   According to Anglin, Mayo said he wanted to be transferred to an institution where he could smoke, and Anglin responded that Mayo needed to stay at Easterling for at least six months.   *Id.*   Mayo then told Anglin he could not practice his Native American religion at Easterling.   Anglin responded that he should talk to the Chaplain about his religious practices because Anglin was not an expert on religious practices.   *Id.* Anglin told Mayo that if the Chaplain provided written documentation that Easterling could not accommodate his religious practices, then Anglin would initiate a transfer to another institution that could accommodate them.   *Id.*

Mayo asked Defendant Chaplain Askew for clarification of AR 333 regarding tobacco use.  *Askew Aff. - Doc. No. 28-6* at 1.   Mayo believes that AR 333 § V(E)(12), which permits tobacco for Native Americans' religious use, creates a liberty interest for Native American inmates to have tobacco for religious use at Easterling. He states that Askew laughed at him when he showed him AR 333 § V(E)(12), and said nothing would ever come of lawsuits about the issue.  *Compl.- Doc. No. 7* at 3.   Askew informed Mayo that because Easterling is a tobacco-free facility, no tobacco is allowed for staff or inmates, but Mayo could use kinnikinnick, a tobacco-free herb, in ceremonies.  *Askew Aff. - Doc. No. 28-6* at 2.   Mayo asked Askew to write Anglin, informing Anglin that Mayo could not practice his faith at Easterling and requesting that Mayo be transferred.  *Id.*  Askew declined and informed Mayo that the classification department handles transfers.

10

Anglin avers that a few days after his conversation with Mayo in May 2011, Askew called Anglin and said that Easterling could accommodate Mayo's religious practices. *Anglin Aff. - Doc. No. 28-8* at 1. Mayo wrote another request slip to Anglin, asking for a transfer because Easterling could not accommodate his religious practices. Anglin responded to Mayo that it was a religious matter, not a classification matter, and Mayo would not be transferred unless one of Anglin's superior's directed him to transfer Mayo. *Id.*

As explained, Mayo submitted an affidavit in response to defendants' exhaustion defense, stating that the chaplain does not know how to go about the correct administrative procedure or will not help Mayo. *Mayo Aff. - Doc. No. 41-1.* Mayo further argues that the grievance process was discontinued. *Pl.'s Resp. - Doc. No. 41* at 4. Nevertheless, Mayo avers, after this suit was filed, Mayo asked for a Religious Assistance form. He avers he was denied a form but was told he would receive one later, and he does not state whether he ever received one or followed up in any way on his post-lawsuit request for a Religious Assistance form. *Mayo Aff. - Doc. No. 41-1.* Plaintiff's own statements are in conflict. Mayo does not dispute that he never submitted an AR 313 Application before filing suit in this case. The court, therefore, finds that an administrative remedy system is available at the institution for Mayo's claims, but he failed to exhaust his administrative remedies before filing suit. The evidentiary materials submitted by defendants demonstrate that Mayo did not pursue and therefore failed to exhaust properly the administrative process with respect to the religious requests about which he complains in this case prior to filing this lawsuit. As noted,

11

exhaustion of available remedies applies to all prisoners in any facility, it is mandatory, and it may not be waived by the court. *See Alexander,* 159 F.3d at 1324-26 (exhaustion requirement of 42 U.S.C. § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or *Bivens*); *see also Porter,* 534 U.S. at 532.  Furthermore, this court may not consider the adequacy or futility of administrative remedies, but only the availability of such. *Higginbottom v Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing *Alexander,* 159 F.3d at 1323). To demonstrate that administrative remedies were unavailable, Mayo must provide specific facts which indicate that prison staff inhibited him from using the grievance process. *See Boyd v. Corr. Corp. Of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling(s) of futility" no excuse for failure to exhaust administrative remedies).  Mayo states that he received no response to his letters and request slips to prison officials seeking a transfer or permission to use tobacco, and that he was refused an AR 313 Application *after* this lawsuit was filed. However, he does not dispute that he failed to file an AR 313 Application or pursue the administrative remedies in AR 313 *before* filing this lawsuit, and he also does not state that staff inhibited him from submitting an AR 313 Application *before* filing suit. Based on the foregoing, the court concludes that Mayo's allegations against defendants regarding religious assistance and practices presented in this cause of action are subject to dismissal as he failed to exhaust an administrative remedy available to him which is required before he may proceed in this court on his claims.

*Woodford*, 548 U.S. at 87-94; *see Turner*, 541 F.3d at 1082-83.[3]

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion to dismiss be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED without prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

---

[3]Even if the court were to consider the merits of Mayo's claims, defendants would be entitled to summary judgment on them.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  To the extent that Mayo sues the defendants in their official capacities, they are immune from monetary damages.  *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity).  The court further takes judicial notice that the court previously addressed and rejected nearly identical claims by Native American inmates at Easterling regarding tobacco use, interruption of ceremonies, timing of fires, and the sweat lodge.  *See Adams v. Mosley*, No. 2:05-cv-352-MHT, 2008 WL 4369246, at *1, 4-5, 8-13 (M.D. Ala. Sept. 25, 2008) (adopting recommendation by the Honorable Charles S. Coody); *see also Coleman v. Allen*, 2:09-cv-311-TMH, 2012 WL 4350945 (M.D. Ala. Sept. 24, 2012) (adopting recommendation by the Honorable Susan Russ Walker, 2012 WL 4378086 (M.D. Ala. Sept. 7, 2012).  As for the claim that white gangs are allowed on ceremonial grounds, the undisputed record is that any gang activity would be defused, and inmates who are not approved to be on the Native American grounds would be dispersed and appropriately disciplined.  *Summers Aff. - Doc. No. 28-3* at 3-4; *Hetzel Aff. - Doc. No. 28-4* at 1.  Defendant Askew avers, and Mayo does not dispute, that Askew did not desecrate plaintiff's religious property or mock plaintiff.  *Doc. No. 28-6* at 2.  Finally, given the early dismissal of all of Mayo's federal claims, in the interest of judicial economy, convenience, fairness, and comity the court should decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,() the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice") (footnote omitted).

It is further

ORDERED that on or before September 16, 2014, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner, 66*1 F.2d at 1209 (adopting pre-October 1, 1981 opinions of the Fifth Circuit as binding precedent).

DONE, this 3rd day of September, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE